We'll move on to the final case for this morning, Ramirez v. The Commissioner. I'm an attorney for Anna Ramirez. I would not like to reserve time for rebuttal and I'm hoping to be less than 10 minutes. The Commissioner and I agree that the ALJ needs to take new evidence and re-evaluate evidence on remand. What we disagree on here today is whether the prior ALJ denial is erased because of that remand. I'm arguing that a remand that discusses or touches on the evidence for the Step 4 evaluation does not erase that prior ALJ remand. In this case, this is a very long case, there's three ALJ denials and the relevant denials are the last two with the same judge, ALJ Waters. In the second denial, she limited my client to sedentary. On appeal, the remand stated that she erred in two physician opinions, the symptom testimony, and the jobs identified at Step 5. Let me pause you right there just so I know what we're talking about here. You're talking about the district court decision in 2021. The most recent district court remand. So 2021. Correct. Because there's the more recent district court decision in 2024, which is what we're reviewing, but you're talking about 2021. Correct.  Also, there is both in your arguments and in the cases some confusion about whether we're talking about with regard to either the law of mandate or the law of the case or some sort of preclusion issue. The ALJ's opinion or the district court's opinion. I think we're talking about the district court's remand and what it told the ALJ to do. I'm going to argue both the law of the case and the rule of mandate. But in either case, we're talking about the district court as of itself as opposed to the ALJ as of itself. In other words, the district court, there was two different judges, but it was the same district court, remanded for specific purposes. First of all, it was remanded to find out whether there were additional limitations in the plaintiff's RFC, which may warrant a finding. And several different times, she said she was remanding to find out whether there were additional limitations. Correct. Correct. And that is either the law of the case or the rule of mandate, vis-a-vis the district court. Correct. Correct. So is that what you're telling us? Are you telling us that the ALJ couldn't change his own opinion no matter what the district court said? Well, my argument is that the ALJ erred in this case because they did not explain any reasoning for changing the RFC from sedentary to light. They did not explain new evidence. They didn't explain why they varied from the district court's ruling. They didn't explain any new analysis related to the prior decision. But could they vary from the district court's ruling? I mean, it was also true, as I understand it, that the district court, that district court opinion, said that the commissioner had conceded through a waiver that the ALJ had erred in rejecting plaintiff's symptom testimony and the opinions of Dr. Maida and nurse practitioner Carroll. Now, was that what the ALJ did this time? Did he now reject the plaintiff's symptom testimony and the opinions of Dr. Maida and nurse practitioner Carroll? So, the ALJ made all of the same findings with one exception. In the second denial, she stated that she was crediting the reviewing physician opinion, Wabick, who gave a light RFC. However, there were additional treatment records after that opinion that warranted additional limitations to sedentary, which I agree with. There's lots of information, lots of medical treatment after that medical opinion that warranted additional limitations to sedentary during the relevant period. The relevant period is from 2015 to 2017. So, and in the most recent ALJ denial, the case of Barr, she did not explain why she changed course and gave that opinion greatly with no qualification. Let me jump in because I want to follow up on the question Judge Berzon had. It was my understanding that one of the arguments you're making, so correct me if I'm wrong, is that the district court's decision in 2021 effectively said, look, at a minimum, your client has this disability. Correct. And it may be more severe than that. Correct. We need to go back because the ALJ made these mistakes. So there's a law of the case argument to be made here that the district court basically put a floor on your client's disability and it could only get more severe. Correct. Not the other way. Correct. All right. So let's stay with that for a second because I'm going to ask you and the government about this very issue. If that's correct, if your reading of that is correct in the law of the case, then it really doesn't matter in a sense, I guess, what the ALJ did or didn't do. Because if the district court said, hey, look, this is a disability, she can't be less disabled than this, maybe more disabled than this, then if you're right on that, that that's what the district court orders did in 2021, then isn't the case, as far as you're concerned, the case is over, right? Then the burden shifts to, certainly this appeal is over, but the burden shifts to the government to fulfill their burden at step five. And if you look at the vocational expert testimony from the most recent hearing, the sedentary jobs that the vocational expert identified lack real markers of reliability. But in any event, that's not what the ALJ did. Correct. So we would have to send it back again. Correct. Right. I'm saying just for our, and that may be how the case plays out, but for what the three of us have to decide today, if you are right as to what the 2021 district court order said, then this case is over.  And we don't have to, and I understand you're making an argument the alternative is that the ALJ didn't do it, but I want to make sure we're not jumping past potentially a winning argument for you is what the 2021 order says. Correct. And I think that even my weaker arguments are very good. And I just want to end very briefly. To side with the commissioner really runs afoul of efficiency and preserving judicial resources. It's so important that if a case just touches on the evidence in step four, which is the largest part of the social security analysis, you don't start from the beginning and have to relitigate that entire step. You might, depending how the remand was worded. Correct. Here it was worded, because in Stacy, for example, it was worded differently. But here it was worded very specifically. Correct. And even further, in Stacy, they identified the new material, important, relevant analysis that caused the change of the decision, that caused the denial. You're shifting to your second point. Yes, yes. My weaker argument I focused on. That's all my time, if you don't have any additional questions. No, I'm good. Thank you. Good morning, Your Honors. Joseph Langhammer on behalf of the Commissioner of Social Security. Judge Owens, I want to start with the question that you asked. You know, does the 2021 district court remand order set a floor on what the RFC ---- Yes, yes. It certainly reads that way. Oh, I disagree, Your Honor. I agree with you that, you know, I'm looking at exactly what the district court said on page 2386 of the record. The order said there might be additional limitations to the plaintiff's RFC. The court also said, the district court also said plaintiff's RFC might not be more limited upon rehearing. Now, I agree that, you know, the district court didn't then say that, you know, the RFC might be less limiting on remand. However ---- It said additional limitations to the plaintiff's RFC may warrant a fine or disability. Even if the plaintiff's RFC is not more limited upon rehearing, ambiguity remains a matter of disability. Accordingly, they concluded that the appropriate remedy is to remand the plaintiff's case for a new hearing to determine whether she is more limited than previously found.  And that is exactly what the ---- So that's what the remand was, to find out whether she was more limited than previously found. Well, I think we need to look at the AL ---- excuse me, the district court's remand order holistically. That's exactly what this Court said in Stacy. Well, but in Stacy, there were two remand orders, because there were two previous opinions, and one of them was exceedingly broad, and the second one, which was narrower, but then had a second sentence that incorporated the first one. And the Court specifically relied on the incorporation of the very broad order, which basically said start all over. There was nothing specific like this. Well, and let's see ---- but let's look at exactly, when we're looking at the entirety of this prior district court remand order, let's remind ourselves what the district court was telling the ALJ to do this time on remand. It was to reevaluate medical opinions and reevaluate subjective complaints. Well, let's go back over that for a minute. The district court also said that the Social Security Commissioner had conceded through waiver that the ALJ erred by rejecting plaintiff's symptom testimony and the opinions of Dr. Meda and nurse practitioner. So the ---- essentially, that was backed out of the case, and you're saying it now comes back again? Even though the commissioner conceded it in the last ---- before the district court, it can bring it back now? Yes. If we look at the conclusion of the district court's order on page 2387, the district court ordered the ALJ to evaluate the medical opinions of plaintiff's treating providers and plaintiff's symptom testimony. So when we see what the district court is ---- Evaluated, not rejected. She specifically said that they had already ---- that the commissioner had conceded through waiver that the opinions of Dr. Meda and nurse practitioner Carroll were ---- could not be rejected, nor her symptom testimony. Yes. And I ---- and just so I can sort of finish my answer here, when you have the district court instructing the ALJ on remand to reevaluate, not credit, if the court had said credit the symptom testimony, credit the treating provider's opinions, you know, we'd be in a different scenario. But the district court here is ordering the ALJ to reevaluate those issues. And as we know, from 404, 15, 45, under Social Security's regulations, those issues are intertwined with what the RFC is. You have to ---- the ALJ reaches the RFC after evaluating those issues. You know, that's all well and good, and I understand your argument. But if you just go to the ---- as Judge ---- as you pointed out earlier, if you just go to the text of the order, all of that may be well and good, what you just said, but it was to determine whether she is more limited than previously found. Yes. The district court said that. Well, that's what it said. And I think we can use ---- Why do you need to, you know, to ---- why would we read it differently? I mean, I don't understand your argument. The reason we would ---- It's pretty clear. The reason we read it differently is because ---- Just read what he said or she said. It's difficult to understand exactly what the ALJ would be supposed to ---- would have to do on remand if there was already a predetermined RFC that the ALJ ---- that the district court was handing down to the ALJ. She didn't say there was a predetermined RFC, but she said that the RFC might be the same as it was or it might be more limited, but not that it could be less limited. Right. And when you're ---- but when you're also telling the ALJ to evaluate issues that inform the RFC, you're giving sort of the ALJ almost a very difficult task, if not impossible, to make findings about issues that inform what the RFC will ultimately be. And that's exactly what the district court this time around said in its order rejecting this argument. Remember, we're evaluating the district court's ruling on law of the case under an abuse of discretion standard. And this court has to ---- even if this court were to look at the evidence ---- Forget the law of the case. What about the rule of mandate? The rule of mandate is ---- I mean, it's a related issue. Right. And it's not discretionary. And here there was a mandate, a very specific mandate. And the district court, when addressing this specific issue, said that its prior ruling on ---- in this case, on the ALJ's decision, prior decision, the ALJ would not take any steps inconsistent with its prior mandate. Well, but the district court did not quote any of the language. I mean, there were two different district judges is what happened here. Correct. There was. And the new district judge didn't show any evidence of having read the first opinion. I disagree. I think in the ---- I think the almost the entirety of the first part of the district court's order rejecting the law of the case and the rule of mandate arguments focused on what the district court previously instructed the ALJ to do on remand. But it didn't quote the language that we're talking about now. Well, and let's just ---- I mean, I think I can understand Your Honor's point. And I would ---- I would ---- I do want to kind of move past that just to say even if. Yeah, that's what ---- that's my question. Even if. Let's say we disagree, all right? Yes. We'll agree to disagree on the reading of the 20-1 order. Absolutely. What happens? So if you disagree with that, this is still a case where the ALJ was free to make a different RFC finding on remand. And the reason is because the ALJ took additional evidence on remand in 2022. The claimant ---- the ALJ held a new hearing where the claimant came in and offered additional testimony about what her limitations were. And though that testimony was pretty extreme and it raised additional concerns for the ALJ, in Stacy, this Court said when there is a different record on remand, the law of the case doctrine does not have to apply. Well, the new evidence could certainly have led the ALJ to conclude that she was not, in fact, more limited. She was as limited as she was before. But that's different from finding that she was more limited. The new evidence could have found that, Your Honor. But the new ---- but the ALJ found that the additional testimony actually raised additional concerns with the claimant's case. And we see this on pages 2277 to 2278 of the record. The ALJ is talking about the additional testimony. And the ALJ is citing numerous inconsistencies in what the claimant said in 2022 on remand and what the record showed. For example, she told the ALJ at 2022 that she didn't drive because her doctor recommended against it. But the ALJ found evidence that Ramirez actually wasn't driving because her license was suspended due to unpaid parking tickets. She told the ALJ in 2022 that she had to use a walker whenever leaving the home since 2018. But as the ALJ pointed out, in 2018, there were notes showing that she was walking without any sort of assistive device. And we have a number of other inconsistencies like that that the ALJ is citing. So we do have ---- there was a lot of argument in briefing about how this is the exact same record. The ALJ is locked into what they said before regarding the RFC. Even if this court finds that the district court order did lock the ALJ into a certain RFC, this court has recognized in Stacy and other cases that if the record is substantially different on remand, the ALJ is free to make additional findings. So that's my question for you is that, let's assume, assumption number one, we disagree with your reading of 2021. What is the standard we have to apply to overcome, we'll call it the lock, the 2021 lock? How big does the key need to be to open that lock? Like how different does the evidence need to be? Well, I think it's different in this. If we're looking at the specific facts of this case, it is different enough because you have the district court. I'll just assume that you're. I'm talking, is there a standard we apply? Is it like clear and convincing or what do we do? Because we don't want a situation where every time you get a different, we have so many new judges in the circuit, right?  So many new ones. So you're going to have times where new judges pick up old cases. And we don't want it where every time you get a new judge, you get a different result. I get that. But there also are going to be times where judges make mistakes. That's why we have a job. And so in that situation, how bad does the mistake need to be to undo what the judge did before? Just so I understand Your Honor's question. So the standard of review that this court talked about in Stacy was did the district court abuse its discretion in declining to apply law of the case? So that's the standard. That's set. We don't have to make a new standard here. That's it. It's abuse of discretion. And then what Stacy kind of went on to say is if there is a ruling about law of the case, if the district court's order does constitute law of the case because it decided an issue, then there are exceptions that when the case goes back to the ALJ on remand, there are times when the record is different enough that we would anticipate we want to give the ALJ some leeway if there's a different record on remand. And in Stacy, that was the case. I believe there was some testimony about the claimant's prior work that gave, I think the court said, this was surprising to the ALJ because they found that there was some new evidence on remand that justified departing from maybe what the district court order had previously said. And that's what we have here. When the ALJ took that additional testimony in 2022, we see it on page 22, like I said, 77 to 78. I would just ask the court to focus on that, where the ALJ is looking at these inconsistencies, which ultimately cast the case in a different light and justified the light RFC in this case. And, again, you know, the argument that, you know, we just have the exact same record on appeal, that just isn't accurate because the ALJ did take that additional testimony and offered additional reasons, again, none of which is challenged on appeal. This is not a substantial evidence case like this court typically sees. You know, the only question for this court is, did the district court act comfortably within its discretion when it declined to apply this discretionary doctrine of law of the case? All right. Thank you, counsel. I know you said you didn't want rebuttal, this last chance. You did have some time left on the clock. You don't have to take it, but I don't want you to walk away and say, gosh, I wish I had done that. Just briefly, Your Honors, when you focus on the symptom testimony and what the question is, does the testimony that the claimant gave in that second hearing, does that support a light RFC? Is that reason to make a different RFC finding? Because the judge rejected her symptom testimony in the second denial. The judge rejected her symptom testimony in the third denial. So if she didn't drive because of her medical condition or because she had unpaid parking tickets, the fact of the matter is she's not driving. Whether the cause of that not driving I don't think is terribly relevant, but either way, it doesn't support a light RFC. So when you're reviewing the, quote, new evidence and new information that may have changed the RFC, I want you to be mindful, does this support a light RFC? Is this material to the case? Thank you. All right. Well, thank you very much. Thank you to all the lawyers today for their briefing and argument. Much appreciated. That's the last case today submitted, and we're done for the day. Thank you.
judges: PAEZ, BERZON, OWENS